Dear Chief:
As Chief of the Howey-in-the-Hills Police Department, you ask substantially the following question:
May the associated fees (such as monthly expenses, purchase, repair and maintenance costs and contractual or licensing obligations) for devices such as mobile data terminals used to access the computer aid dispatch system or portable devices such as a Blackberry or PDA device used when the mobile data terminals are not readily accessible be paid from the fees received by the city pursuant to section 318.21(9), Florida Statutes?
In sum:
 The associated fees (such as monthly expenses, purchase, repair and maintenance costs, and contractual or licensing obligations) for devices such as mobile data terminal used to access the computer aid dispatch system or the portable devices such as a Blackberry or PDA device used when the mobile data terminals are not readily accessible may be paid from the fees received by the city pursuant to section 318.21(9), Florida Statutes.
You state that the Lake County Sheriff's Office dispatches the Howey-in-the-Hills Police Department for all calls for service within the town limits. Officers use laptops referred to as Mobile Data Terminals to access the Computer Aid Dispatch system. The system allows the police officers to review calls and research the system's database for useful information pertaining to any call for service. In addition, officers also utilize portable devices such as Blackberry, PDA, etc., to communicate directly with the system when the mobile data terminal is not readily accessible.
Section 318.21, Florida Statutes, provides a scheme for the distribution of civil penalties by county courts, stating that "[a]ll civil penalties received by a county court pursuant to the provisions of this chapter shall be distributed and paid monthly as [prescribed in the statute]." Subsection (9) of the statute provides:
 "Twelve dollars and fifty cents from each moving traffic violation must be used by the county to fund that county's participation in an intergovernmental radio communication program approved by the Department of Management Services. If the county is not participating in such a program, funds collected must be used to fund local law enforcement automation and must be distributed to the municipality or special improvement district in which the violation occurred or to the county if the violation occurred within the unincorporated area of the county."
While section 318.21(9), Florida Statutes, permits distribution to a municipality, such distribution occurs only if the county in which the municipality is located is not participating in an intergovernmental radio communication program approved by the Division of Communications of the Department of Management Services. You have advised this office that there is no intergovernmental radio communication program in Lake County.
Section 318.21(9), Florida Statutes, however, requires that the funds received by a municipality pursuant to its terms be used to fund law enforcement automation. In Attorney General Opinion 97-73, this office recognized that as the term "automation" was not defined in the statute, it should be given its plain and ordinary meaning, with consideration given not only to the literal and usual meaning of words, but also to their effect and meaning on the objectives and purposes of the statute's enactment.[1] This office noted that the term "automation" has been generally defined as "the technique of making an apparatus (as a calculating machine), a process (as of manufacturing), or a system (as of bookkeeping) operate automatically: the state of being operated automatically: automatically controlled operation of an apparatus, process, or system by mechanical or electronic devices that take the place of human organs of observation, effort, and decision."[2] Based upon the statutory definition and the use of the term elsewhere in the statutes, [3] this office concluded that the civil penalty disbursed to a city pursuant to section 318.21, Florida Statutes, to fund local law enforcement automation could not be used to purchase law enforcement automobiles.[4]
The purchase of devices such as mobile data terminals or portable devices such as a Blackberry or PDA device used when the mobile data terminals are not readily accessible, however, would appear to fall within the ambit of the term automation as used in section 318.21(9), Florida Statutes. Similarly, the associated costs for such devices, such as monthly expenses, purchase, repair and maintenance costs, and contractual or licensing obligations for such devices would appear to be a necessary component of using such devices.[5] Moreover, unlike, for example, the limitation placed on contraband forfeiture funds in section932.7055(5)(a), Florida Statutes, authorizing the use of such funds to provide additional equipment or expertise, but stating that such proceeds and interest may not be used to meet normal operating expenses of the law enforcement agency, section 318.21(9) contains no such limitation.
Accordingly, I am of the opinion that the associated fees (such as monthly expenses, purchase, repair and maintenance costs, and contractual or licensing obligations) for devices such as mobile data terminals used to access the computer aid dispatch system or portable devices such as a Blackberry or PDA device used when the mobile data terminals are not readily accessible may be paid from the fees received by the city pursuant to section 318.21(9), Florida Statutes.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] See Florida Birth-Related Neurological Injury CompensationAssociation v. Florida Division of Administrative Hearings, 686 So. 2d 1349
(Fla. 1997) (where Legislature has not defined words used in a phrase, the language should usually be given its plain and ordinary meaning).
[2] See Webster's Third New International Dictionary p. 148 (unabridged ed. 1981).
[3] See, e.g., ss. 20.21(2)(e) (automation of all information systems), 119.01(2)(a) (automation of public records), Fla. Stat.; andsee ss. 985.47(11)(o) (automated tracking system for serious or habitual juvenile offenders); 943.05(2)(b) (automated fingerprint identification system), 943.325(8) (Department of Law Enforcement to establish an automated DNA identification system), Fla. Stat. Cf. Op. Att'y Gen. Fla. 97-50 (1997), concluding that the term "automated vending facility" refers to a mechanized, automated operation whereby goods or services are transferred to an individual with no need for human interaction or personal input on behalf of the one who is providing the goods or services at the time they are delivered.
[4] See also Ops. Att'y Gen. Fla. 97-38 (1997) (funds disbursed to the municipality in which the traffic violation occurred pursuant to s.318.21(10) [now s. 318.21(9)], must be used to fund local law enforcement automation); 05-25 (2005) (funds received pursuant to s. 318.21[9], Fla. Stat., are to be used only for law enforcement automation and not for general law enforcement purposes).
[5] Cf. In re Advisory Opinion to the Governor, 60 So. 2d 285 (Fla. 1952); Peters v. Hansen, 157 So. 2d 103 (Fla. 2d DCA 1963) (where a public officer is charged by law with a specific duty, and the means by which the duty is to be accomplished are not specially provided for, the public officer has the implied power to use such means as are reasonably necessary to the successful performance of the required duty).